UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| IN RE ) | Bankruptcy Case |
| ) | No. 10-65478-fra12 |
| LINDA M. JONES, ) | |
| ) | MEMORANDUM OPINION |
| Debtor. ) | |

This case originated as a Chapter 11 filing on September 9, 2010, and later converted to Chapter 12 on debtor Linda Jones'(Debtor) motion. The present matter comes before the Court on a motion to dismiss filed by creditor PremierWest Bank (PremierWest) and later joined in by creditors Charles and Joyce Todd (the Todds).

In their joinder, the Todds argued Debtor is ineligible for Chapter 12 relief. The matter was heard on July 7, 2011, at which time Debtor testified, and after which I took the matter under advisement. After due consideration of the parties' memoranda and the evidence and argument adduced at the hearing, I find Debtor to be ineligible for Chapter 12 relief. However, I will afford her an opportunity to reorganize in Chapter 11, and thus the present motion will be denied. My reasons follow.

Facts:

The essential facts are undisputed. Debtor owns and maintains approximately 22 acres of land and improvements in rural Jackson County, Oregon (the property), doing business as "Eden Farm." Her principal activity is boarding and training horses. She also offers riding lessons and occasionally puts on horse shows. She keeps about 45 horses on the property, 3 of which she owns. Of the remaining horses, approximately 15

Page 1 - MEMORANDUM OPINION

are owned by private third parties; the balance are owned by Equamore Foundation (Equamore). Equamore is a § 501(c)(3) charitable foundation whose mission is to care for abandoned and/or neglected horses. Debtor is Equamore's executive director. For the most part, the Equamore horses are not saleable. On occasion Equamore will permit third parties to adopt a horse for a fee, although due to the economy, it often waives its adoption fee. Equamore hires veterinarians to geld all of the stallions it takes in. If one of its mares is pregnant when taken in, Equamore will also raise the foal, but not for resale.

The great bulk of Debtor's income comes from boarding fees.[1] Private parties pay $350 per month to board a horse. Equamore is also supposed to pay a monthly fee, but due to lack of funds, now owes Debtor over $89,000.

Debtor lives on the property. It is zoned by Jackson County for exclusive farm use. Debtor has obtained a conditional use permit from the County planning authorities. The permit apparently authorizes an additional dwelling on the property for farm labor, and the use of the property for boarding and showing up to 50 horses. Debtor's 3 employees (1 full-time, 2 part-time), are treated as "agricultural employees" for tax purposes. One of the 3 resides permanently on the property in housing designated, as noted above, as farm housing for land use purposes. Also situated on the property are several barns/sheds/stables as well as an indoor arena. Debtor owns 2 dump-trucks as well as a tractor with various implements to facilitate her operations. She purchases the feed for the horses from third parties.

Discussion:

The question presented is whether Debtor is eligible for Chapter 12 relief. Under 11 U.S.C. § 109(f)[2] "[o]nly a family farmer . . . may be a debtor under Chapter 12 . . . ." Section 101(18)(A) defines "family

// // //

// // //

---

[1] Debtor testified that approximately 2-3% of her earnings come from selling organic fertilizer made mostly from manure.

[2] Unless otherwise noted, all subsequent statutory references are to Title 11 of the United States Code.

Page 2 - MEMORANDUM OPINION

farmer" in relevant part as "an individual . . . engaged in a farming operation . . . ."[3] A *"farming operation"* "includes farming, tillage of the soil, dairy farming, ranching, production or raising of crops, poultry, or livestock, and production of poultry or livestock products in an unmanufactured state." § 101(21). This list is not exclusive. § 102(3)(the term "includes" is not limiting). In fact, given Chapter 12's remedial purposes, the term "farming operation" is to be broadly construed, In re Sugar Pine Ranch, 100 B.R. 28, 31 (Bankr. D. Or. 1989), but not so broadly "so as to eliminate the definition altogether by bringing in operations clearly outside the nature or practices one normally associates with farming." In re Cluck, 101 B.R. 691, 695 (Bankr. E.D. Ok. 1989)(internal quotation omitted).

Ineligibility Arguments Not Precluded:

As a threshold matter, Debtor maintains the Todds are precluded from arguing she is ineligible. In particular, she argues conversion was not permissible under § 1112(f)[4] unless she was in fact eligible to be a Chapter 12 debtor. Thus, she maintains, eligibility was determined within the context of her successful motion to convert. Even assuming *arguendo* that preclusion principles such as res judicata, collateral estoppel or law of the case might normally apply in that context, see, Reynolds v. Madoff (In re Reynolds), 2010 WL 4260026, *2 (Bankr. D. Mass. 2010), under the facts at bar they do not.

Debtor filed her motion to convert on March 31, 2011. The motion was not served by mail on any party in interest and only a few parties, which did not include the Todds, received electronic notice of the motion's filing. The motion was then granted by order entered April 7, 2011, without affording any party in interest an opportunity to be heard. This was error. Conversion from Chapter 11 to 12 is not an automatic right. Section 1112(d) allows it only upon a debtor's request, provided the debtor has not previously received

// // //

---

[3] Section 101(18)(A) imposes a debt ceiling and percentage floors for farming operation income and debt. Whether or not Debtor meets these criteria depends on whether her activities besides her small fertilizer business meet the definition of "farming operation."

[4] Section 1112(f) provides that "[n]ot withstanding any other provision of this section, a case may not be converted to a case under another chapter of this title unless the debtor may be a debtor under such chapter."

Page 3 - MEMORANDUM OPINION

a discharge under § 1141(d), and provided it would be "equitable." Further, as noted above, § 1112(f) limits the right to convert to debtors eligible for the destination chapter (here, Chapter 12).

Under FRBP 1017(f)(1), a motion to convert from Chapter 11 to Chapter 12 is governed by FRBP 9014, which is the rule for contested matters. In turn, FRBP 9014(a) requires that "reasonable notice and opportunity for hearing . . . be afforded the party against whom relief is sought." Through FRBP 9001, § 102(1) governs the construction of the phrase "reasonable notice and opportunity for hearing." The amount of notice and the opportunity for hearing are normally those which are "appropriate in the particular circumstances," § 102(1)(A)[5]; further, no actual hearing need be held if a party in interest does not timely request one. § 102(1)(B)(i).[6] These provisions implement basic tenets of due process.[7] Here, interested parties were denied that process and thus the conversion order has no preclusive effect. <u>Kremer v. Chemical Construction Corp</u>, 456 U.S. 461, 480-81, n.22, 102 S. Ct. 1883, 1897, 72 L. Ed.2d 262 (1982)(no claim or issue preclusive effect given to a judgment entered without due process); <u>Pepper v. U.S.</u>, __ U.S. __, 131 S. Ct. 1229, 1250-51, 179 L. Ed.2d 196 (2011)(law of the case doctrine not applicable to clearly erroneous decision working a manifest injustice).[8]

// // //

---

[5] Normally, parties in interest receive 21 days notice of a motion to convert. FRBP 2002(a)(4).

[6] The court may authorize an act without hearing, if there is insufficient time to hold one. § 102(1)(b)(ii). Even then however, in the context at bar, a party in interest is "entitled to a subsequent, meaningful opportunity to present any arguments that . . .[it] had against conversion." <u>Rosson v. Fitzgerald (In re Rosson)</u>, 545 F.3d 764, 775 (9th Cir. 2008). Here, there was no exigency mandating immediate conversion. Even if there was, in light of <u>Rosson</u>, the conversion order would have no preclusive effect on eligibility issues.

[7] Due process requires notice reasonably calculated, under all circumstances, to apprise one of the pendency of the action and afford one an opportunity to present objections. <u>Mullane v. Central Hanover Bank & Trust Co.</u>, 339 U.S. 306, 314, 70 S. Ct. 652, 657, 94 L. Ed. 865 (1950).

[8] Debtor also argues the Todds waived their right to contest eligibility by not objecting to conversion. "Waiver" is the intentional relinquishment or abandonment of a known right or privilege. <u>United States v. Amwest Surety Insurance Company</u>, 54 F.3d 601, 602 (9th Cir. 1995). An implied waiver will be found where there is clear, decisive, and unequivocal conduct which indicates a purpose to waive the legal rights involved. <u>Id</u>. at 603. Here, the Todds cannot have (impliedly or otherwise) intentionally relinquished something (i.e. the right to contest eligibility), they were never afforded an opportunity to assert.

Page 4 - MEMORANDUM OPINION

Debtor is Not Engaged in a "Farming Operation":

Courts in this District use a "totality of the circumstances" test to determine whether a Chapter 12 debtor is engaged in a "farming operation." Sugar Pine Ranch, 100 B.R. at 31. Some of the factors to be considered are:

> 1. Whether the location of the operation would be considered a traditional farm;
> 2. The nature of the enterprise at the location;
> 3. The type of product and its eventual market, although the court should not be limited to products and produce which are traditionally associated with farming in the state of the court's location. Debtors should not be denied the protection of the Bankruptcy Code merely because their endeavors are not found in the laundry list of Old McDonald's Farm;
> 4. The physical presence or absence of family members on the farm;
> 5. Ownership of traditional farm assets;
> 6. Whether the debtor is involved in the process of growing or developing crops or livestock; and
> 7. Perhaps the key factor is whether or not the practice or operation is subject to the inherent risks of farming.

Id. (internal citations and quotations omitted).

Some of these factors weigh in Debtor's favor. The property's rural location would be considered traditional farm ground; Debtor lives on the premises; and, many of her personal assets and improvements to the property would be considered traditional "farm assets." Those however do not tip the balance in her favor.[9]

While I acknowledge there is a split on the issue, see, In re Poe, 2009 WL 2357160 (Bankr. N.D. W. Va. 2009)(noting and discussing same), on the facts at bar, Debtor's boarding and training horses owned by third parties for a flat fee is not a "farming operation." She neither breeds nor raises horses for sale. Further, she produces no product; rather she provides a service. See, Cluck, 101 B.R. at 695. Because her boarding and other fees are fixed, at most they are only indirectly tied to the inherent risks of farming such as weather, disease, yield, prices, etc. As more thoroughly explained in Poe:

// // //

---

[9] The property's zoning as "exclusive farm use" and her employees' designation as "agricultural" for tax purposes also do not control. Sugar Pine Ranch, 100 B.R. at 33 (borrowing definitions as to "farming operations" from unrelated statutory schemes (including the Tax Code) should be undertaken with great hesitation and caution).

Page 5 - MEMORANDUM OPINION

> Here, the Debtors' boarding/training operations are at the risk of injury or disease as well as the risk that market prices for feed will rise. These are the same risks inherent in the raising of horses for livestock. Although the same risks are involved in both activities, raising horses for livestock is a "farming operation" whereas boarding and training horses is not. The distinction is that, in raising horses for livestock, the "family farmer" bears all risks. If an animal is lost to disease or serious injury, the family farmer receives no profit on the animal, has lost all that he has invested in it, and bears the cost of replacing it. In contrast, a boarding/training business is only minimally affected. While profits may falter in the short-term until a new boarder is located, no meaningful expense incurs to replace the animal. Additionally, the business owner would have recouped any monies invested for care and maintenance and would have profited for any investment of labor in the animal through the fees received from the horse owner up to the time in which the animal was lost. Similarly, if the market price for feed was to drastically increase, the boarding/training operator could simply pass this cost on to the owner, whereas the family farmer must himself bear this risk which would result in less profit in the future sale of the animal.

Poe, 2009 WL 2357160 at *6.

I thus find and conclude Debtor was not at any relevant time engaged in a "farming operation," and that she is ineligible for Chapter 12 relief.

Case Disposition:

The Todds as well as PremierWest urge dismissal. Debtor has urged re-conversion to Chapter 11 should I find her ineligible. This case was filed in September, 2010. Debtor initially had until January 17, 2011, to file a Chapter 11 plan and disclosure statement. That deadline was later extended to April, 1, 2011. On March 31, 2011, through new counsel and before a plan and disclosure statement were filed, Debtor moved to convert. Given the totality of her circumstances, I find that motion was made in good faith. She continued her good faith by timely filing a Chapter 12 plan. She deserves a chance to reorganize, especially given the salutary societal endeavor with which she is so closely affiliated.

The pending motion to dismiss will be denied. Debtor's request to reorganize in Chapter 11 will be granted. More accurately, the order granting her motion to convert will be set aside, and an order denying the motion will be entered.[10] However, because her case is now almost 11 months old, her reorganization will be

---

[10] Because parties' due process rights are implicated, set aside is warranted under FRCP 60(b)(4)(made applicable by FRBP 9024). Procedurally, Rule 60 relief is a "cleaner" remedy than an order granting re-conversion,
(continued...)

Page 6 - MEMORANDUM OPINION

put on a fast track, and an order requiring her to file a Chapter 11 plan and disclosure statement by August 31, 2011, will be entered.

The above constitute my findings of fact and conclusions of law under FRBP 7052. They shall not be separately stated.

FRANK R. ALLEY, III
Chief Bankruptcy Judge

---

[10](...continued)
because paradoxically Debtor may have been aggrieved by the grant of her motion to convert to Chapter 12. If a hearing had been held on the motion and the parties permitted to litigate eligibility, the motion would have been denied, the case would have remained in Chapter 11, and the Debtor would have had an opportunity to reorganize in that chapter. Now that the case is in Chapter 12, re-conversion may not be possible, as the Bankruptcy Code, and in particular, § 1208, does not explicitly provide for conversion to Chapter 11 from Chapter 12. The cases are split on this issue. Compare, In re Stumbo, 301 B.R. 34 (Bankr. S.D. Iowa 2002) (conversion from Chapter 11 to 12 not permitted), with, In re Orr, 71 B.R. 639 (Bankr. E.D. N.C. 1987)(conversion permitted if certain conditions met). Deciding the present matter under Rule 60 avoids this issue to no one's prejudice.

Page 7 - MEMORANDUM OPINION